**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

KIM RAGLAND,

               **Petitioner,**

   **- against -**

**HAROLD D. GRAHAM,**

              **Respondent.**

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/10/15

**OPINION AND ORDER**

**09-cv-09639 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Petitioner Kim Ragland brings this pro se habeas corpus petition pursuant to section 2254 of Title 28 of the United States Code challenging his state court conviction following a jury trial in New York County Court, Rockland County.[1] After being convicted of Burglary in the Second Degree[2] and Possession

---

[1]     *See* Petition for a Writ of Habeas Corpus ("Pet.") at i; Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Opp. Mem.") at 1.

[2]     *See* New York Penal Law ("NYPL") § 140.25[2].

of Burglary Tools,[3] Ragland was sentenced to a determinate term of thirteen years

for his burglary conviction and a concurrent one-year definite term for possession

of burglar's tools.[4]

On November 19, 2009, Ragland filed the instant Petition, challenging

his conviction on the following grounds: (1) the trial court violated Ragland's

Fourteenth Amendment rights because the court lacked subject matter jurisdiction

on an uncharged, unfiled misdemeanor; (2) the trial court lacked jurisdiction

because Ragland was never arraigned on the uncharged, unfiled misdemeanor; (3)

the prosecutor failed to disclose *Rosario* and *Brady* material; (4) the prosecutor

violated New York Criminal Procedure Law ("C.P.L.") section 170.65; (5) the

prosecutor knowingly presented false evidence before the grand jury and at trial, in

violation of Ragland's Fifth Amendment rights; (6) the prosecutor violated his

Fifth Amendment right not to incriminate himself; (7) the trial court erred in

imposing a determinate term; and (8) the New York burglary statute is

unconstitutional.  For the following reasons, the Petition is denied.

## II.    BACKGROUND

### A.    The Offending Conduct

---

[3]    *See id.* § 140.35.

[4]    *See* Opp. Mem. at 1.

The crimes underlying Ragland's conviction occurred on April 12, 2002.[5]  At approximately 11:40 a.m., Michael and Roberta Katz arrived at their home at 6 King's Gate Road and noticed an unfamiliar green car in their driveway.[6]  Michael Katz then entered his home and saw Ragland running out of the house.[7]  Ragland entered the green car that had been parked in the driveway and fled.[8]  After Michael Katz informed police that his home had been burglarized and a report was issued to that effect over police radio, a police officer drove in Ragland's direction and observed a car matching the description that Katz had provided to the police.[9]  Ragland exited the vehicle and attempted to hide from the police.[10]  Police subsequently found Ragland hiding under a porch and arrested him.[11]

### B.    Procedural History

On January 17, 2003, Ragland was convicted by a jury of second

---

[5]      *See id.*

[6]      *See id.* at 1–2.

[7]      *See id.* at 2.

[8]      *See id.*

[9]      *See id.*

[10]     *See id.*

[11]     *See id.*

degree burglary and possession of burglar's tools.[12]  Ragland appealed his conviction to the Appellate Division, Second Department, raising the following claims: (1) the trial court lacked subject matter jurisdiction on an uncharged, unfiled misdemeanor; (2) the trial court lacked jurisdiction because Ragland was never arraigned on the uncharged, unfiled misdemeanor; (3) the prosecutor failed to disclose *Rosario* and *Brady* material; (4) Ragland did not waive his right to be prosecuted by an information; (5) the prosecutor knowingly presented false testimony; (6) the prosecutor violated his Fifth Amendment right not to incriminate himself; and (7) the trial court erred in imposing a determinate sentence.[13]

On January 30, 2007, the Appellate Division unanimously affirmed Ragland's conviction.[14]  Ragland then submitted a letter seeking leave to appeal to the New York Court of Appeals.[15]  On September 7, 2007, leave to appeal to the Court of Appeals was denied.[16]  The United States Supreme Court denied certiorari on April 14, 2008.[17]

---

[12]     *See id.* at 2–3.

[13]     *See id.* at 3.

[14]     *See id.*

[15]     *See id.*

[16]     *See id.*

[17]     *See id.*

## III.   LEGAL STANDARDS

### A.   Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court may not grant a writ of habeas corpus to a prisoner in custody[18] pursuant to the judgment of a state court with respect to any claim, unless the state court's adjudication on the merits of the claim: "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;"[19] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[20]

A state-court decision is contrary to clearly established federal law, as determined by the Supreme Court, in the following two instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is

---

[18]     The meaning of "in custody" is not limited to situations where an individual is being held in prison or jail.  A person is also considered "in custody" where, as here, the person is on probation or parole. *See Jones v. Cunningham*, 371 U.S. 236, 239–41 (1963).

[19]     28 U.S.C. § 2254(d)(1).

[20]     *Id.* § 2254(d)(2).

also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[21]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[22]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous. Rather, "[t]he state court's application of clearly established law must be *objectively unreasonable*."[23] This standard "'falls

---

[21]    *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[22]    *Id.* at 407.

[23]    *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

somewhere between merely erroneous and unreasonable to all reasonable

jurists.'"[24]  While the test requires "'[s]ome increment of incorrectness beyond

error, . . . the increment need not be great; otherwise habeas relief would be limited

to state court decisions so far off the mark as to suggest judicial incompetence.'"[25]

Furthermore, section 2254(d) applies to a defendant's habeas petition even where

the state court order does not include an explanation of its reasoning.[26]

> Where a state court's decision is unaccompanied by an
> explanation, the habeas petitioner's burden still must be
> met by showing there was no reasonable basis for the
> state court to deny relief.  This is so whether or not the
> state court reveals which of the elements in a multipart
> claim it found insufficient, for [section] 2254(d) applies
> when a "claim," not a component of one, has been
> adjudicated.[27]

> Section 2254(d) also applies where a state court does not explicitly

---

[24]     *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[25]     *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[26]     *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[27]     *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311–12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." (quotation marks and citation omitted))).

state in its opinion that it is adjudicating a claim on the merits.[28]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[29]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations.  Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[30]

### B.     Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[31]  In order to satisfy this exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[32] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall

---

[28]     *See id.*

[29]     *Id.* at 99.

[30]     *See* 28 U.S.C. § 2254(e)(1).

[31]     *Id.* § 2254(b)(1)(A).

[32]     *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

'well within the mainstream of constitutional litigation.'"[33]  Fair presentation of a claim, for exhaustion purposes, includes petitioning for discretionary review in the state's highest appellate court.[34]

When a habeas petition under the AEDPA contains both exhausted and unexhausted claims, a district court "can offer the petitioner 'the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims.'"[35]  A district court may also deny a petition on the merits, even if it contains unexhausted claims.[36]  The Supreme Court has noted that "plainly meritless" claims should be denied on the merits rather than dismissed for failure to exhaust.[37]  Finally, in limited

---

[33]     *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Dave v. Attorney Gen.*, 969 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[34]     *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999); *see also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that in New York, exhaustion requires that a "criminal defendant . . . first appeal his or her conviction to the Appellate Division, and then . . . seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

[35]     *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

[36]     *See* 28 U.S.C. § 2254(b)(2).

[37]     *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

circumstances, a district court may stay a mixed petition and hold it in abeyance until it has been properly presented to the state courts.[38]

## C.    Procedural Bar

Under the adequate and independent state ground doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar, federal habeas review is precluded.[39]  Even if the state court alternatively rules on the merits of the federal claim, federal habeas review is precluded if an adequate and independent state ground would bar the claim in state court.[40]  Federal habeas review of procedurally barred claims is foreclosed unless the prisoner can demonstrate either (1) "'cause for the default and actual prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental miscarriage of justice.'"[41]  To show cause for a default, a prisoner must put forth some objective factor, external to the defense, explaining why the claim was not

---

[38]    *See id.* at 277–78.

[39]    *See Jones v. Duncan*, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)).

[40]    *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 72–82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996).

[41]    *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617–18 (2d Cir. 1994).

previously raised.[42]  The Supreme Court has provided little guidance as to what

constitutes "prejudice," but it can be inferred that prejudice is shown when the

claim, if proven, would bear on the petitioner's guilt or punishment.[43]  The

fundamental miscarriage of justice exception to the procedural bar rule is available

only upon a showing of actual innocence.[44]  Finally, a habeas petitioner may not

avoid the exhaustion requirement by waiting until federal habeas review to bring

claims properly raised in state court.  If such claims would be procedurally barred

on the state level, they are deemed exhausted and procedurally defaulted for the

purposes of federal habeas review.[45]

## IV.   DISCUSSION

### A.   Ragland's Claims

#### 1.   Errors Pertaining to Ragland's Misdemeanor Conviction

---

[42]    *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[43]    *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes" (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999))).

[44]    *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[45]    *See Coleman*, 501 U.S. at 735 n.1; *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006).

**(Grounds 1, 2, and 4)**

Ragland alleges several errors regarding his misdemeanor conviction for possessing burglar's tools.  Specifically, Ragland contends that the trial court violated his Fourteenth Amendment rights because the court lacked subject matter jurisdiction on an uncharged, unfiled misdemeanor; that the trial court lacked jurisdiction because Ragland was never arraigned on the uncharged, unfiled misdemeanor; and that the prosecutor violated C.P.L. section 170.65.[46]  In making these claims, Ragland relies predominately on the fact that the prosecutor failed to file a misdemeanor complaint charging him with that crime, that Ragland did not waive his right to be prosecuted by an information, and that he was falsely convicted for a misdemeanor that was never filed or charged in a complaint.[47]

Ragland's claims are unavailing.  In New York, a grand jury indictment, not an accusatory instrument such as a complaint, forms the basis for a criminal prosecution.[48]  "The offense or offenses for which a grand jury may indict a person in any particular case are not limited to that or those which may have been designated, at the commencement of the grand jury proceeding, to be the subject of

---

[46]    *See* Pet. at 1–8, 13–14.

[47]    *See id.* at 13–14.

[48]    *See* C.P.L. § 1.20[1], [3], [8], [17].

-12-

the inquiry."[49]  Here, Ragland was charged with burglary in the second degree by felony complaint on April 12, 2002.[50]  Three days later, the prosecution served Ragland with statutory notice that it intended to present to the grand jury the charges of second degree burglary, possession of burglar's tools, and related charges.[51]  On April 24, 2002, the grand jury returned an indictment charging Ragland with burglary in the second degree and possession of burglar's tools.[52]  The grand jury's decision to indict Ragland for the misdemeanor did not violate his rights.  Moreover, any of the alleged deficiencies in the state grand jury proceeding were rendered harmless by the petit jury's subsequent conviction of Ragland for possession of burglar's tools.[53]

Ragland's claims regarding alleged errors pertaining to his misdemeanor conviction are therefore denied.

---

[49]     C.P.L. § 190.62[2]; *see also People v. Guzman*, 650 N.Y.S.2d 302, 302–03 (2d Dep't 1996); *People v. Wilkins*, 599 N.Y.S.2d 49, 49 (2d Dep't 1993).

[50]     *See* Opp. Mem. at 12.

[51]     *See id.*

[52]     *See id.*

[53]     *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the [defendant was] guilty as charged, but also that [he] is in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.").

## 2.      Presentation of False Evidence (Ground 5)

Ragland also contends that the prosecution knowingly presented false evidence at the grand jury proceeding and at trial.[54]  The evidence at issue was the testimony of two police officers, Officer Cawley and Officer Venturini.[55]  Officer Cawley testified that she found a screwdriver in Ragland's possession at the time of Ragland's arrest while Officer Venturini testified that Officer Cawley informed Officer Venturini during the arrest that Ragland was in possession of a screwdriver.[56]  Ragland contends that the absence of a misdemeanor complaint and police reports pertaining to this misdemeanor indicates that this evidence is false.[57]

It is well-established that "'a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"[58]  However, Ragland has failed to show that any of the evidence presented at the grand jury proceeding or his trial was false.  It does not follow that

---

[54]     *See* Pet. at 14–18.

[55]     *See id.* at 14–15, 17.

[56]     *See id.*

[57]     *See id.* at 15.

[58]     *Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).  *Accord Shih Wei Su v. Filion*, 335 F.3d 119, 126–27 (2d Cir. 2003).

the testimony is false simply because there was no mention of the screwdriver in one officer's police report and no issuance of a misdemeanor complaint. Moreover, Detective Dunn's report, which was disclosed to Ragland prior to trial, specified that Officer Cawley had informed Detective Dunn of Ragland's possession of a screwdriver.[59]  Whether Officer Cawley was being truthful was a question of fact for the jury.

Thus, Ragland was not deprived of due process and his claim is rejected.

### 3. Failure to Disclose *Brady* and *Rosario* Material (Ground 3)

#### a. *Brady* Violation

Ragland contends that the prosecution failed to disclose written statements, a filed complaint, and police incident reports or notes pertaining to Ragland's possession of burglary tools.[60]  Under *Brady v. Maryland*, suppression of material evidence favorable to the accused is a violation of due process.[61] Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have

---

[59]    *See* Opp. Mem. at 14–15.

[60]    *See* Pet. at 9.

[61]    *See* 373 U.S. 83, 87 (1963).

been different."[62]   The Appellate Division determined that Ragland's *Brady* violation claim was without merit.[63]

Ragland's claim is unavailing.  *First*, the prosecution did disclose reports written by Officer Cawley, Officer Venturini, and Detective Dunn.[64] Ragland has not specified which additional documents should have been disclosed to him prior to trial.  Instead, Ragland appears to take issue with the non-existence of some of these documents, such as the misdemeanor complaint, as well as the lack of reference to Ragland's possession of a screwdriver in the reports written by Officer Crowley and Officer Venturini.  Neither constitutes a *Brady* violation. *Second*, Ragland's claim pertains to documents that support Ragland's possession of burglar's tools.  If such documents did exist, they would have been inculpatory, not exculpatory, which falls outside the purview of *Brady*.  *Third*, even if such documents did exist and were exculpatory, Ragland has not alleged how the disclosure would have altered the outcome of the trial.

The Appellate Division's ruling was not an unreasonable application of *Brady* and Ragland's claim is therefore rejected.

---

[62]     *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[63]     *See People v. Ragland*, 829 N.Y.S.2d 189, 190 (2d Dep't 1997).

[64]     *See* Opp. Mem. at 14–15; Respondent's Brief to the Appellate Division, Ex. D to Opp. Mem, at 21–22.

### b.   *Rosa*rio Violation

Ragland also alleges that the prosecution's failure to disclose the aforementioned evidence constitutes a *Rosario*[65] violation.  However, this claim does not present a federal constitutional question as *Rosario* is based wholly on New York law.[66]  Therefore the issue is not subject to review under a writ of habeas corpus.  Moreover, the Appellate Division determined that Ragland's claim that the prosecution withheld *Rosario* material was not supported by the record on appeal.[67]

Thus, Ragland's *Rosario* claim is denied.

### 4.   Violation of Ragland's Right Against Self-Incrimination (Ground 6)

Ragland contends that the prosecutor violated Ragland's right against self-incrimination under the Fifth Amendment when the prosecutor stated during trial that Ragland could take the stand.[68]  Although it is true that a prosecutor may

---

[65]   *People v. Rosario*, 9 N.Y.2d 286 (1961).

[66]   *See United States ex rel. Butler v. Schubin*, 376 F. Supp. 1241, 1247 (S.D.N.Y. 1974), *aff'd*, 508 F.2d 837 (2d Cir. 1975); *see also Velazquez v. Poole*, 614 F. Supp. 2d 284, 335 (E.D.N.Y. 2007) (stating that an allegation that the prosecution violated *Rosario* "is a state law claim not cognizable on federal habeas review" (citation omitted)).

[67]   *See Ragland*, 829 N.Y.S.2d at 190.

[68]   *See* Pet. at 18–19.

-17-

not suggest that a defendant's silence is evidence of guilt,[69] mere reference to a defendant's ability to testify is insufficient to constitute a Fifth Amendment violation.[70]  The Second Circuit has stated:

> The test governing whether a prosecutor's statements amount to an improper comment on the accused's silence in violation of the Fifth Amendment looks at the statements in context and examines whether they naturally and necessarily would be interpreted by the jury as a comment on the defendant's failure to testify.[71]

Further, the prosecutor's statements must substantially prejudice the defendant's right to a fair trial.[72]  The existence of such prejudice is less likely where the trial court gave curative instructions to the jury.[73]

Here, the prosecutor made reference to Ragland's ability to testify after objecting to Ragland's repeated attempts to provide his own account of the events to the jury, without being sworn and subject to cross-examination, and

---

[69]     *See Griffin v. California*, 380 U.S. 609, 615 (1965).

[70]     *See, e.g.*, *United States v. Robinson*, 485 U.S. 25, 31–32 (1988) (holding that a prosecutor's reference to a defendant's ability to testify does not violate the defendant's Fifth Amendment rights where the prosecutor's statement is a "fair response to a claim made by defendant or his counsel").

[71]     *United States v. Knoll*, 16 F.3d 1313, 1323 (2d Cir. 1994) (quotation marks and citation omitted).

[72]     *See United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981).

[73]     *See Knoll*, 16 F.3d at 1323 (discussing how the trial court's issuance of a curative instruction presents the appellants with a "particularly heavy burden" in establishing that the prosecutor's statements resulted in substantial prejudice).

despite the prosecutor's objections.[74]  Further, the trial court provided curative

instructions to the jury indicating that the defendant was not required to testify.[75]

Given this context, the Appellate Division determined that "the prosecutor's

comment merely advised the defendant of the proper options open to him, and did

not deprive the defendant of a fair trial."[76]

Based on the foregoing, it is unlikely that the prosecutor's statement

prejudiced the defendant's due process rights.  The Appellate Division's ruling was

not an unreasonable application of Supreme Court precedent.  Thus, Ragland's

claim is rejected.

### 5.    Sentencing Error (Ground 7)

Ragland also argues that the trial court incorrectly sentenced him as a

second felony offender and improperly sentenced Ragland to a determinate

sentence.[77]  However, this claim is without merit.  *First*, Ragland was not

sentenced as a second felony offender.[78]  *Second*, "[n]o federal constitutional issue

---

[74]    *See* Opp. Mem. at 20–21.

[75]    *See id.* at 18.

[76]    *See Ragland*, 829 N.Y.S.2d at 190.

[77]    *See* Pet. at 19–20.

[78]    *See* Opp. Mem. at 24–25.

is presented where . . . the sentence is within the range prescribed by law."[79]

Ragland was sentenced to a determinate sentence of thirteen years,[80] which is

within the statutory sentencing range for class C felonies, including burglary in the

second degree.[81]  As Ragland's sentence falls within the range prescribed by state

law, his claim is not cognizable on federal habeas review and is therefore rejected.

### 6.    Constitutionality of NYPL Section 140.25 (Ground 8)

Ragland also contends that New York's burglary statute[82] violates due

process because the statute was improperly passed in 1981.[83]  This claim, however,

is procedurally barred from habeas review.  The Second Circuit has determined

that the invocation of C.P.L. Section 440.10(3)(c) constitutes an independent and

adequate state procedural bar foreclosing habeas review.[84]  In affirming the denial

of Ragland's state habeas corpus petition, the Appellate Division invoked a state

procedural bar, determining that Ragland's challenge to the constitutionality of

---

[79]    *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

[80]    *See* Pet. at 1; Opp. Mem. at 24.

[81]    NYPL § 70.02[3][b].  Specifically, Ragland faced a minimum
sentence of three and one-half years and a maximum sentence of fifteen years for
his second degree burglary conviction. *See id.*

[82]    *Id.* § 140.25.

[83]    *See* Opp. Mem. at 26.

[84]    *See Murden v. Artuz*, 497 F.3d 178, 191–95 (2d Cir. 2007).

New York's burglary statute was procedurally barred because the claim could have been raised on direct appeal or in a C.P.L. Article 440 motion.[85]  Ragland has not offered any reason for the procedural default, nor has he established that a fundamental miscarriage of justice would occur from the failure to entertain his challenge.  Ragland's claim is therefore rejected.

## V.    CONCLUSION

For the foregoing reasons, the Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[86]  A "substantial showing" does not require a petitioner to show that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve encouragement to proceed further.'"[87]  Petitioner has made no showing.  Thus, I decline to grant a COA.  The

---

[85]    *See People ex rel. Ragland v. Bellnier*, 920 N.Y.S.2d 919, 920 (3d Dep't 2011).

[86]    28 U.S.C. § 2253(c)(2).

[87]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

Clerk of the Court is directed to close this Petition and this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             February 10, 2015

**- Appearances -**

**Petitioner (Pro Se):**

Kim Ragland
SBI# 362775B
Northern State Prison
P.O. Box 190
Avenel, N.J. 07001


**For Respondent:**

Carrie A. Ciganek
Senior Assistant District Attorney, Rockland County
County Office Building
1 South Main Street, Suite 500
New City, New York 10956
(845) 638-5005